UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PABLO SOLIS, <u>et</u> <u>al.</u>, | |
| Plaintiffs, | |
| -v- | |
| 53rd STREET PARTNERS LLC d/b/a REMI RESTAURANT, ROBERTO DELLEDONNE, and STEFANO FRITTELLA, | |
| Defendants. | |

CIVIL ACTION NO.: 19 Civ. 11708 (PGG) (SLC)

<u>**REPORT & RECOMMENDATION**</u>

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE PAUL G. GARDEPHE**, United States District Judge:

## I.  <u>INTRODUCTION</u>

In this action, filed under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u>, New York Labor Law ("NYLL") §§ 190 <u>et</u> <u>seq.</u>, New York's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), and the New York Worker Adjustment and Retraining Notification Act, NYLL §§ 860 <u>et</u> <u>seq.</u> ("NY WARN Act"), Plaintiffs Abraham Fonseca, Amelia Mejia Escobar, Andres Taveras, Armando Ramirez, Bairma Gyndunova, Carlos Colmena, Carlos Perez, Cesar Ruiz, Claudia Lodi Freddi, Dilio Urgiles, Erick Cortes Zamora, Esdras Obed Paz Quezada, Filip Kozminski, Gabriel Ruiz, Heriberto Martinez, Julio Vega, Luis Perez, Manuel Molina, Marcelo Vargas, Mariana Iturbide Orozco, Nubia Liliana Velandia, Oscar Fernando Gomez Alzate, Oscar Velandia, Rachel Lovaglio Canal, Ricardo Cortes Zamora, Ruhul Amin Tipu, Walter Calle, Xavier Ortiz, and Yullios Donge Meneses (together, "Plaintiffs") seek payment of unpaid minimum and overtime wages and related relief from Defendants Roberto Delledonne ("Delledonne") and 53rd Street Partners, LLC ("53rd Street") (Delledonne and 53rd Street together, "Defendants").  (ECF No. 1).

Plaintiffs allege that during their employment at Defendants' restaurant, Defendants failed to pay them the proper minimum wage and overtime premiums, improperly took tip credits and withheld owed tips, and failed to provide them with wage notices and a notice of closure as required by state law.  (ECF No. 1 at 9–13).

Defendants, although properly served, failed to appear in or defend this action.  (See ECF No. 81).  On March 25, 2020, the Clerk of Court issued a certificate of default as to them.  (ECF No. 61).  On April 1, 2020, Plaintiffs submitted a Motion for Default Judgment (the "Motion") that included Plaintiffs' alleged damages calculations.  (ECF Nos. 62–68).  On August 6, 2020, the Honorable Paul G. Gardephe found Defendants to be in default[1] and referred the Motion to the undersigned to conduct an inquest into damages.  (ECF No. 81).

## II.  BACKGROUND

### A.  Factual Background

Plaintiffs allege that 53rd Street, doing business as Remi Restaurant ("Remi"), is a "luxury restaurant" that is located across from the Museum of Modern Art in New York City and has an annual revenue exceeding $6 million.  (ECF No. 1 ¶¶ 12–13).

Plaintiffs allege that, by no later than April 2019, Defendants anticipated that Remi would close, but did not properly notify them under the NY WARN Act.  (ECF No. 1 ¶¶ 18, 67–69).  In addition, Plaintiffs allege that Defendants "regularly or occasionally failed to pay minimum wage and overtime wages" required by federal and state law, and that "Defendants stopped making regular payments of wages to their employees in or about the summer of 2019."  (Id. ¶¶ 19–20).

---

[1] Judge Gardephe dismissed Defendant Stefano Fritella from the case after Plaintiffs confirmed that he had not been served. (ECF No. 81).

Some employees received checks that bounced.  (Id. ¶ 20).  As of December 11, 2019, Defendants were "five weeks in arrears in paying wages to all or nearly all of their employees," and those wages remain outstanding.  (Id. ¶ 21).  On December 11, 2019, Delledonne cancelled all upcoming events at Remi, and on December 12, 2019, told Plaintiffs that the restaurant was closing.  (Id. ¶¶ 22–23).  Because most Plaintiffs received no wages from November 24, 2019 through December 12, 2019, they allege violations of federal and state minimum wage and overtime requirements.  (Id. ¶ 19).

**B.  Procedural History**

Plaintiffs commenced this action on December 20, 2019 by filing the Complaint, in which they asserted the following claims against the Defendants:  (1) violations of the minimum wage and overtime provisions of the FLSA and the NYLL; (2) failure to provide adequate annual wage notices under the WTPA; and (3) failure to provide notice of closure under the NY WARN Act. (ECF No. 1).

Defendants did not respond to the Complaint or otherwise appear, and on March 25, 2020, the Clerk of Court issued certificates of default as to both Defendants.  (ECF No. 61).  On April 1, 2020, Plaintiffs filed the Motion.  (ECF Nos. 62–68).  On April 2, 2020, Judge Gardephe issued an Order to Show Cause, which scheduled a hearing on the question of why Defendants should not be found in default and held liable for the allegations in the Complaint.  (ECF No. 69). Because Defendants did not appear at the hearing or respond to the Order to Show Cause, on August 6, 2020, Judge Gardephe issued an Order of Default as to 53rd Street and Delledonne, and referred the Motion to the undersigned to conduct an inquest into damages.  (ECF No. 81). On August 7, 2020, the Court issued an Order that directed Plaintiffs to file proposed findings of

fact and conclusions of law as to damages and attorneys' fees, and warned Defendants that if they failed to respond to the Plaintiffs' submissions or contact the Court to request a hearing, the Court would "**issue a Report and Recommendation regarding damages and attorneys' fees based on the Plaintiffs' written submissions alone, without an in-court hearing.**"  (ECF No. 82).  Defendants did not respond to Plaintiffs' submissions or otherwise contact the Court.

Plaintiffs' initial damages submission provided only the final calculations for their damages without the underlying documents supporting those calculations (ECF Nos. 62–67, 86, 86-1), which the Court found "d[id] not provide a basis on which the Court [could] establish damages with a reasonable certainty" and thus ordered Plaintiffs to submit individual declarations to supplement their damages request.  (ECF No. 89).  Thereafter, Plaintiffs submitted individual declarations supplying the missing information (ECF Nos. 92–121) and provided an updated summary of damages (the "Damages Summary") (ECF No. 122-3).

### III. <u>DISCUSSION</u>

No party has requested a hearing on the issue of damages, and Defendants have not submitted any written materials.  Therefore, the Court has conducted the inquest based solely on the materials Plaintiffs submitted in support of their Motion.  <u>See</u> <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence"); <u>Action S.A. v. Marc Rich & Co.</u>, 951 F.2d 504, 508 (2d Cir. 1991) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . allows but does not require the district judge to conduct a hearing.");

Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020); Fed. R. Civ. P. 55(b)(2).

A.    **Jurisdiction and Venue**

As a threshold matter, the Court has subject matter jurisdiction over Plaintiffs' claims. They sue under a federal statute — the FLSA — that gives rise to subject matter jurisdiction under 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1367, the Court may exercise supplemental jurisdiction over their NYLL, WTPA, and NY WARN Act claims because they arise out of the same facts and circumstances as their FLSA claims.  See Perez, 2019 WL 7403983, at *5.

Personal jurisdiction is "a necessary prerequisite to entry of a default judgment."  Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting Sheldon v. Plot Commerce, No. 15 Civ. 5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016)).  The Court has personal jurisdiction over 53rd Street because it is a New York limited liability company with its principal place of business in New York City, and over Delledonne because he is a resident of New York.  (ECF No. 1 ¶¶ 7–9).

Venue is proper because 53rd Street is a New York domestic business corporation that maintains its principal offices in this District (ECF No. 1 ¶ 4), see 28 U.S.C. § 1391(b)(1), and because a substantial part of the events or omissions giving rise to the claims occurred in this District. See 28 U.S.C. § 1391(b)(2).

B.    **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  See NYLL ¶ 198(3).  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  See 29

U.S.C. § 255(a); <u>see</u> <u>also</u> <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 129 (1988).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited."  <u>Id.</u> at 133.  Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides the greatest relief.  <u>Ni v. Bat-Yam Food Servs. Inc.</u>, No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, multiple Plaintiffs incurred damages outside of the FLSA's shorter statute of limitations but within the NYLL's six-year statute of limitations.  (<u>See</u> ECF Nos. 97 (D. Urgiles), 105 (A. Fonseca), 118 (M. Iturbide Orozco)).  Because the NYLL provides for equal or greater relief relative to the FLSA, the Court recommends that Plaintiffs be awarded damages under the NYLL.  <u>See</u> <u>Schalaudek v. Chateau 20th St. LLC</u>, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *5 (S.D.N.Y. Feb. 24, 2017).

**C.  <u>Legal Standards</u>**

    **1.  <u>Default judgment</u>**

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  <u>See</u> <u>Bricklayers & Allied Craftworkers Local 2, Albany, N.Y.</u> <u>Pension Fund v. Moulton Masonry & Const., LLC</u>, 779 F.3d 182, 185–86 (2d Cir. 2015).  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).  Because

a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."   <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing <u>Enron</u>, 10 F.3d at 96).

### 2.      Determining liability on default

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," <u>Rovio Entm't, Ltd. v. Allstar Vending, Inc.</u>, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants."   <u>Gesualdi v. Quadrozzi Equip. Leasing Corp.</u>, 629 F. App'x 111, 113 (2d Cir. 2015).   The Court must determine "whether the allegations in the complaint establish the defendants' liability as a matter of law."   <u>Id.</u>   If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief[.]"   <u>Gucci Am., Inc. v. Tyrrell-Miller</u>, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the complaint fails to state a claim on which relief may be granted, the court may not award damages, "even if the post-default inquest submissions supply the missing information."   <u>Perez</u>, 2019 WL 7403983, at *4.

### 3.      Determining damages on default

Once liability has been established, a court must "'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'"   <u>Am. Jewish Comm. v. Berman</u>, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), <u>adopted by</u> 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016) (quoting <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155

(2d Cir. 1999)).  A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages."  Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).  The evidence the plaintiffs submit must be admissible.  Poulos v. City of New York, No. 14 Civ. 03023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence").  If the documents the plaintiffs have submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the court need not conduct an evidentiary hearing.  Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (explaining that court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

**D.**     **Application**

    **1.**     **Liability**

To establish a claim for wages under the FLSA, a plaintiff must prove that:  (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked hours for which he did not receive minimum or overtime wages.  See Tackie v. Keff Enter., Inc., No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus

with interstate commerce or a minimum amount of annual sales."  Id. at *2 n.2.  The Court

analyzes each of these three elements in turn.

### a.  The employment relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest

of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts afford the term employer

"an expansive definition with 'striking breadth.'"  Mondragon v. Keff, No. 15 Civ. 2529 (JPO)

(BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v.

Darden, 503 US. 318, 326 (1992)).  Under the FLSA, "[a]n individual may have multiple

'employers,'" such that "'all joint employers are responsible, both individually and jointly, for

compliance with all of the applicable provisions of the [FLSA].'"  Martin v. Sprint United Mgmt.

Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Plaintiffs' "employers" for FLSA purposes, the

Court examines the "economic reality" of the working relationship.  Irizarry v. Catsimatidis, 722

F.3d 99, 104 (2d Cir. 2013).  Courts in the Second Circuit consider four non-exclusive factors to

assess the "economic reality" of an alleged employment relationship, including "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  Id. at 105 (quoting Barfield v. N.Y.C. Health

& Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)).  This "inquiry is a totality-of-the-circumstances

approach, so no one factor is dispositive[.]"  Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, see NYLL ¶ 190(3), "and the

crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree

of control exercised by the purported employer over the results produced or the means used to achieve the results.'"  Mondragon, 2019 WL 2551536, at *7 (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," Camara v. Kenner, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  Hart, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA."  Martin, 273 F. Supp. 3d at 422.

Plaintiffs allege that Defendants employed them at Remi, and that at all relevant times, they were "employees."  (ECF No. 1 ¶ 7; ECF No. 67 at 7–8).  By their default, the Defendants have admitted their status as Plaintiffs' employers.  See Rovio Entm't, 97 F. Supp. 3d at 545. Plaintiffs worked at Remi as servers, bussers, bartenders, cashiers, and event planners.  (ECF Nos. 92–121).  Plaintiffs allege that Delledonne was the sole owner and manager of Remi, "over[saw] all operations of the restaurant," and "exercised operational control over the employees."  (ECF No. 67 at 8).  From these allegations, the Court infers that Delledonne determined the wages and compensation of employees, including Plaintiffs', established employees' schedules, maintained employee records, and had the authority to hire and fire employees.  Plaintiffs have therefore adequately established that Defendants were their employers.  Perez, 2019 WL 7403983, at *6.

Because Defendants were Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor (NY WARN Act damages are treated differently, as discussed further below).  See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL).

### b.    Interstate commerce

Under the FLSA, Plaintiffs must establish that they were, or their employer was, engaged in interstate commerce.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); see 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at not less than "one and one-half times the regular rate at which [they are] employed").

Plaintiffs allege that Remi had sales over $500,000 and was engaged in interstate commerce.  (ECF No. 67 at 8).  This meets the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and therefore, Plaintiffs have satisfied the interstate commerce element for FLSA liability.  See Mondragon, 2019 WL 2251536, at *9.

c.    **Unpaid wages and improperly withheld tips**

Under both federal and state law, employers must pay employees a statutory minimum wage.  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage.  See 29 U.S.C. § 218(a).

Under federal and state law, employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage.  29 U.S.C. § 203(m)(2); 12 N.Y.C.R.R. § 146-1.3(b); see Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016).  "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites."  Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes."  Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).  The employer bears the burden of proving that this notice was given.  See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage.  See NYLL § 652(4).  "An employer may receive the benefit of this tip credit only if the employer provides 'to each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage' and 'maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee . . . allowances . .

. claimed as part of the minimum wage.'"   Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)); 12 N.Y.C.R.R. §§ 146-1.3, -2.2.

Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  See Reyes, 2019 WL 5722475, at *5; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).   In addition, with exceptions not relevant here, NYLL does not permit an employer to "demand or accept, directly or indirectly, any part of the gratuities, received by an employee."  NYLL § 196-d; see Schalaudek, 2017 WL 729544, at *6.

Here, Plaintiffs who received tips at Remi (the "Tipped Plaintiffs")[2] allege that Defendants did not provide them with sufficient notice of the tip credit, and Defendants are therefore ineligible for the credit.  (ECF Nos. 92, 97, 100–01, 103, 110–20).  There is no evidence that Defendants provided adequate notice to the Tipped Plaintiffs before their employment stating that Defendants would be claiming a tip credit against the minimum wage.  See Schalaudek, 2017 WL 729544, at *6.  Accordingly, as to all of the Tipped Plaintiffs, Defendants failed to meet the notice requirements in the FLSA and the NYLL, and are not entitled to any tip credit against the minimum wage.  Id. at *7.

Because Defendants are not entitled to any tip credit, Defendants were required to pay the Tipped Plaintiffs full minimum wage, rather than the lower minimum wage applicable to

---

[2] The Tipped Plaintiffs are:  Ruhul Amin Tipu, Walter Calle, Carlos Colmena, Yullios Donge Meneses, Abraham Fonseca, Claudia Freddi, Oscar Fernando Gomez Alzate, Amelia Mejia Escobar, Manuel Molina, Xavier Ortiz, Carlos Perez., Luis Perez, Edras Obed Paz Quezada, Cesar Ruiz, Gabriel Ruiz, Andreas Taveras, Julio Vega, Nubia Liliana Velandia, and Oscar Velandia.

tipped workers.  See Cao, 2010 WL 4159391, at *2.  Defendants did not pay the Tipped Plaintiffs in accordance with these statutory minimums, in addition to paying them no wages in the weeks before Remi closed.  (See infra § III.D.2.a).  Accordingly, the Tipped Plaintiffs are entitled to recover damages for the amount by which they were underpaid, in addition to their regular wages for the weeks they were not paid.  See Cao, 2010 WL 4159391, at *2.

> ### d.   Liability under NY WARN Act

The purpose of the NY WARN Act is "to ensure that workers receive advanced notice before plant closings and mass layoffs."  See SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council, Inc., No. 13 Civ. 2768 (JGK) (JCF), 2013 WL 6003731, at * 2 (S.D.N.Y. Nov. 13, 2013), adopted sub nom. 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc., No. 13 Civ. 2768 (JGK), 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013).  Under the NY WARN Act, an "employer" includes all employers that employ more than 50 full time employees, and a "plant closing" is defined as the termination of at least 25 employees at a single site of employment.  Id. (citing NYLL § 860-a(3), (6)).  The NY WARN Act requires that an employer give 90 days' notice before closings or mass layoffs.  Id. (citing NYLL § 800-b(1)).  Employers who do not give sufficient notice of a closing are "liable to affected employees for up to 60 days of pay and benefits."  Gill v. ACACIA Network, No. 13 Civ. 9088 (TPG), 2015 WL 1254774, at *3 (S.D.N.Y. Mar. 18, 2015).

The NY WARN Act states that an employer is a "business enterprise" and courts in the Second Circuit have interpreted this language to mean that only corporate entities, not individuals, can be liable.  Gill, 2015 WL 1254774, at *3 (citing Warshun v. New York Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013)).

Here, 53rd Street, as a corporate entity, is liable for failing to provide any advance notice of Remi's closure.  53rd Street constitutes an "employer" because at the time of the required notice (90 days before closure) it employed more than 50 employees (ECF No. 1 ¶ 28), and its closure constitutes a "plant closing" because more than 25 employees were terminated from a single site of employment.  (See ECF No. 1).  Thus, 53rd Street is liable to the affected employees for up to 60 days of pay and benefits.  Gill, 2015 WL 1254774, at *3.

### 2.  **Damages**

As a preliminary matter, the Court must determine whether Plaintiffs have provided sufficient evidence to support their claim for damages.  Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  Plaintiffs' submissions include an affidavit from their counsel, individual Plaintiff declarations, and documentary evidence.  (See ECF Nos. 92–123).  The Court finds that Plaintiffs have met their burden and that an in-person hearing is unnecessary because their submissions constitute a "sufficient basis from which to evaluate the fairness" of their damages request. Fustok, 873 F.2d at 40; Boston Scientific Corp. v. New York Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015).

Here, each Plaintiff requesting damages has submitted a detailed declaration substantiating the requested damages.  (See ECF Nos. 92–121).  The Plaintiffs have also provided the Damages Summary.  Based on Plaintiffs' submissions, the Court will next analyze each category of damages.

    a.    **Minimum wage and improper tip credit**

    i.    **Legal standards**

The FLSA and NYLL require employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week ("Straight Time Wages").  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146.1-2.  "[I]n the absence of rebuttal by defendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct."  Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

In addition, under both the FLSA and the NYLL, a tip credit notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit against the employee's minimum wages.  See Reyes, 2019 WL 5722475, at *5.  As analyzed above (supra § III.D.1.c), Defendants did not provide adequate notice that they would be applying a tip credit against Plaintiffs' wages, and thus were not eligible to take the credit.

The New York minimum wage rate during the six-year period for the damages calculation in this action was as follows:

| Date | Min. Wage Rate | Tip Credit |
|------|----------------|------------|
| Dec. 31, 2013 until Dec. 31, 2014 | $8.00 | $3.00 |
| Dec. 31, 2014 until Dec. 31, 2015 | $8.75 | $3.75 |
| Dec. 31, 2015 until Dec. 31, 2016 | $9.00 | $1.50 |
| Dec. 31,2016 until Dec. 31, 2017 | $11.00 | $3.50 |
| Dec. 31, 2017 until Dec. 31, 2018 (New York City Large Employer) | $13.00 | $4.35 |
| Dec. 31, 2017 until Dec. 31, 2018 (New York City Large Employer) | $15.00 | $5.00 |

Unless otherwise noted, Plaintiffs' damages occurred in 2019, in the weeks leading up to Remi's closure.

###### ii.      **Application**

Having reviewed Plaintiffs' submissions and the specific calculations from each Plaintiff's declaration, the Court adopts those calculations, except where noted.  The calculations that differ from the Damages Summary are in **bold**, with an explanatory footnote where necessary.  For example, in 2019 Plaintiff Amin Tipu was paid at a rate of $10.00 an hour with $5.00 per hour taken in tip credits.  (ECF No. 114).  From November 18, 2019 to December 12, 2019, Amin Tipu alleges that he worked 139 Straight Time hours, all of which were unpaid.  (Id.)  Thus, for that period he is owed $1,390.00 in Straight Time wages (139 hours x $10/hour), and $695.00 in unpaid tip credits (139 hours x $5/hour).  (Id.)  The Court has applied those calculations to each Plaintiff, and accordingly, each is entitled to recover Straight Time wages in the following amounts:

| Plaintiff | Straight Time Rate | Tip Credit Taken | Unpaid Straight Time Hours | Straight Time Wages Owed | Tip Credits Owed |
|---|---|---|---|---|---|
| Amin Tipu, R. | $10.00/hr | $5.00/hr | 139 | $1,390.00 | $695.00 |
| Calle, W. | $10.00/hr | $5.00/hr | **195** | **$1,950.00[3]** | **$975.00** |
| Colmena, C. | $10.00/hr | $5.00/hr | **138.5** | **$1,385.00[4]** | **$692.50** |
| Cortes Zamora, E. | $16.00/hr | $0.00 | **108** | **$1,728.00[5]** | $0.00 |
| Cortes Zamora, R. | $15.00/hr | $0.00 | 152 | $2,280.00 | $0.00 |
| Donge Meneses, Y. | $15.00/hr | $0.00 | 146 | $1,460.00 | $730.00 |
| Fonesca, A. | $10.00/hr | $5.00/hr | 142 | $1,420.00 | $710.00 |
| Freddi, C. | $10.00/hr | $5.00/hr | 64.5 | $645.00 | $322.50 |

---

[3] Plaintiff Calle's declaration requests payment for 115 hours of Straight Time pay, but the Court calculated Calle's claimed unpaid hours as 195, not 115.  (ECF No. 101).  The Court adjusted the Straight Time wages owed and the tip credits owed accordingly.

[4] Plaintiff Colmena's declaration requests payment for 119 hours of Straight Time pay, but the Court calculates Colmena's claimed unpaid hours as 138.5, and not 119.  (ECF No. 117).  The Court adjusted the Straight Time wages owed and the tip credits owed accordingly.

[5] Plaintiff Erik Cortes Zamora's declaration requests payment for 108 hours of Straight Time, but miscalculates the amount owed as $768.00.  (ECF No. 98).  Defendants paid Cortes Zamora a rate of $16 per hour, making the correct total of unpaid Straight Time $1,728.  (Id.)

| Name | Rate 1 | Rate 2 | Hours | Straight Time | Tip Credit |
|---|---|---|---|---|---|
| Gomez Alzate, O.F. | $10.00/hr | $5.00/hr | **133** | **$1,330.00[6]** | **$665.00** |
| Gyndunova, B. | $16.00/hr | $0.00 | 108.5 | $1,736.00 | $0.00 |
| Iturbide Orozco, M.[7] | $5-7.50/hr | $3-3.50/hr | 5196 | $0.00 | $15,599.00 |
| Kozminski, F. | $15.00/hr | $0.00 | 92.5 | $1,387.50 | $0.00 |
| Lovaglio Canal, R.[8] | n/a | n/a | n/a | $24,424.41 | $0.00 |
| Martinez, M. | $29.80/hr | $0.00 | 150 | $4,302.00 | $0.00 |
| Mejia Escobar, M. | $10.00/hr | $5.00/hr | 126 | $1,260.00 | $630.00 |
| Molina, M | $10.00/hr | $5.00/hr | 195 | $1,950.00 | $975.00 |
| Ortiz, X. | $10.00/hr | $5.00/hr | 80 | $800.00 | $400.00 |
| Perez, C. | $10.00/hr | $5.00/hr | 86.5 | $865.00 | $5,313.97 |
| Perez, L. | n/a | n/a | **406** | **$5,706.00[9]** | $0.00 |
| Quezada, E.O. | $10.00/hr | $5.00/hr | 117.5 | **$1,175.00[10]** | $587.50 |
| Ramirez, A. | $890/wk | n/a | 3.6 weeks | $3,204.00 | $0.00 |
| Ruiz, C. (White Jacket) | $10.00/hr | $5.00/hr | **130** | **$1,300.00[11]** | $0.00 |
| Ruiz, C. (Cook) | $16.00/hr | $0.00 | 64 | **$1,024.00** | $0.00 |
| Ruiz, G. | $10.00/hr | $5.00/hr | 24 | $240.00 | $120.00 |
| Taveras, A. | $10.00/hr | $5.00/hr | 147 | $1,470.00 | $735.00 |
| Urgiles, D.[12] | $5-$10/hr | $3-$5/hr | 10,360 | $0.00 | $35,922.00 |
| Vargas, M. | $1,003.30 | $0.00 | 3.66 weeks | $3,678.80 | $0.00 |
| Vega, J. | $10.00/hr | $5.00/hr | 145 | $1,450.00 | $725.00 |

[6] Plaintiff Gomez Alzante's declaration requests payment for 107 hours of Straight Time pay, but the Court calculates Alzante's claimed unpaid hours as 133, and not 107.  (ECF No. 120).  The Court adjusted the Straight Time wages owed the tip credits owed accordingly.

[7] Defendant Iturbide Orozco claims tip credits from 2014 to 2017 as follows: 2014 - 1,553 hours, at $5 per hour, with a tip credit of $3 hour, for a total of $4,659; 2015 – 1,461 hours, at $5 per hour, with a tip credit of $3.75 per hour, for a total of $5,479; 2016 – 1,263 hours, at $7.50 per hour, with a tip credit of $1.50 per hour, for a total of $1,895; 2017 – 1,019 hours, at $7.50 per hour, with a tip credit of $3.50 per hour, for a total of $3,567, for a grand total of $15,599.  (ECF No. 118).

[8] Plaintiff Lovaglio Canal worked at Remi as the Director of Special Events on a commission basis. (ECF No. 93).  Her declaration substantiates her commission in the amount of $24,424.41.  (Id.)

[9] Plaintiff Luis Perez's declaration states that while he worked at Remi he was only paid in tips. (ECF No. 105).  Luis Perez requests payment for 96 hours of unpaid work from 2017, at the minimum wage of $11 per hour, for a total of $1,056.  (Id.)  He also requests payment for 175 hours of Straight Time pay worked in 2019 at the minimum wage of $15 per hour, but the Court calculates Perez's claimed unpaid hours for 2019 as 310, and not 175.  (Id.)  Thus, the total amount owed for Straight Time wages for 2019 is $4,650, for a total of $5,706.

[10] Plaintiff Esdras Obed Paz Quezada's declaration requests payment for 117.5 hours of Straight Time pay at a rate of $10 per hour, but calculates the total amount owed as $1,170.50 instead of $1,175.00.  (ECF No. 110).  The Court adjusted Straight Time wages owed accordingly.

[11] Plaintiff Cesar Ruiz's declaration requests unpaid Straight Time wages for his work as both a White Jacket and a cook but does not subtract the total requested hours as a cook from the requested hours as a White Jacket.  (See ECF No. 104).  The Court subtracted the number of Straight Time hours worked as a cook (weekends) from the total hours requested for work as a White Jacket (remainder of the week) and adjusted the calculations accordingly.  (Id.)

[12] Defendant Urgiles claims tip credits from 2014 to 2019 as follows: 2014 - 1,440 hours, at $5 per hour, with a tip credit of $3 hour, for a total of $4,320; 2015 – 1,720 hours, at $5 per hour, with a tip credit of $3.75 per hour, for a total of $6,450; 2016 – 1,920 hours, at $7.50 per hour, with a tip credit of $1.50 per hour, for a total of $2,880; 2017 – 1,920 hours, at $7.50 per hour, with a tip credit of $3.50 per hour, for a total of $6,720; 2018 – 1,920 hours, at $8.65 per hour, with a tip credit of $4.35 per hour, for a total of $8,353; and 2019 – 1,440 hours worked, at $10 per hour, with a tip credit of $5.00 per hour, for a total of $7,200; for a grand total of $35,922 in owed tip credits.

| Velandia, N. L. | $10.00/hr | $5.00/hr | 88 | $880.00 | $440.00 |
| Velandia, O.[13] | $11-13/hr | $1-$2/hr | 3,242.5 | **$2,405.00[14]** | **$4,934.42** |

### b.    **Overtime**

#### i.    **Legal Standards**

With respect to overtime, the FLSA and the NYLL require employers to pay employees "one and one-half times the ordinary minimum wage rate for any time that exceeds 40 hours in a given week."  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *7 (S.D.N.Y. Sept. 8, 2016); see 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4; see also Kernes v. Glob. Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016) ("[A]n employee is entitled to be paid for overtime hours (i.e., hours exceeding 40 per week), at a rate not less than one and one-half times the regular rate at which [the employee] is employed." (internal citation omitted)).  The Court calculates appropriate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one half," then by multiplying that rate "by the number of hours in excess of forty hours the employee worked each week."  Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015).

---

[13] Defendant O. Velandia claims tip credits from 2017 and 2019 as follows: 2017 – 1,550.5 hours, at $10.00 per hour, with a tip credit of $1.00 per hour, for a total of $1,550.48.  (ECF No. 103).  For all of 2019, O. Velandia states that he was paid $13 per hour, but for the last weeks of employment (November 11, 2019 to December 12, 2019) requests $5 per hour in tip credits.  Because the declaration states that he was paid $13 for all of 2019, the Court calculates the total hours worked in 2019 as 3,242.5, at $13 per hour, with a tip credit of $2.00 per hour, for a total of $3,013.94; for a grand total of $4,934.42 owed in tip credits.

[14] Plaintiff Oscar Velandia's declaration requests payment for 185 hours of Straight Time pay at a rate of $13 per hour, but calculates that total as $2,509, instead of $2,405.  (ECF No. 103).  It appears that the total was reached by including the requested overtime hours (8) in the Straight Time pay calculation.  (Id.)  The Court therefore adjusted the Straight Time wages owed and the tip credits owed accordingly.

ii.      **Application**

Having reviewed Plaintiffs' Damages Summary and the specific calculations from each

Plaintiff's declaration, the Court adopts those calculations, except where noted.  The calculations

that differ from the Damages Summary are in **bold**, with an explanatory footnote where

necessary.  For example, Plaintiff Calle was paid a regular rate of $10.00 per hour, with a $5 per

hour tip credit.  (ECF No. 101).  Calle alleges that during the period of November 18, 2019 until

December 12, 2019, he worked 46 hours of unpaid overtime.  (Id.)  Because the Court finds that

Defendants were not entitled to take the tip credit (supra § III.D.1.c), the overtime rate should

be calculated using the 2019 minimum wage of $15.00 per hour, for an overtime rate of $22.50

per hour.  (Id.)  Thus, Calle is owed $1,035 in overtime wages (46 x $22.50).  (Id.)  The Court has

applied those calculations to all Plaintiffs, and accordingly, each is entitled to recover overtime

wages in the following amounts:

| Plaintiff | Overtime Wage Owed |
|---|---:|
| Amin Tipu, R. | $292.50 |
| Calle, W. | **$1,035.00**[15] |
| Colmena, C. | **$135.00**[16] |
| Cortes Zamora, E. | $0.00[17] |
| Cortes Zamora, R. | $945.00 |
| Donge Meneses, Y. | $337.50 |
| Fonesca, A. | $0.00 |
| Freddi, C. | $146.25 |
| Gomez Alzate, O.F. | $0.00 |
| Gyndunova, B. | $0.00 |
| Iturbide Orozco, M.[18] | $838.54 |

---

[15] Plaintiff Calle's declaration requests payment for 26 hours of overtime pay, but on review of the declaration, Calle's claimed unpaid overtime hours totals 46, and not 26.  (ECF No. 101).  The Court adjusted the overtime wages owed accordingly.

[16] Plaintiff Colmena's declaration asserts that he is owed wages for six overtime hours, but this amount is excluded from the summary of damages at ECF No. 122-3.  (ECF No. 117).

[17] Where $0.00 is indicated, that Plaintiff did not request any overtime wages.  (See ECF No. 98).

[18] Defendant Iturbide Orozco claims tip credits from 2014 to 2017 as follows: 2014 - 1,553 hours, at $5 per hour, with a tip credit of $3 hour, for a total of $4,659; 2015 – 1,461 hours, at $5 per hour, with a tip credit of $3.75 per

| | |
|---|---|
| Kozminski, F. | $90.00 |
| Lovaglio Canal, R. | $0.00 |
| Martinez, H. | $0.00 |
| Mejia Escobar, A. | $78.75 |
| Molina, M. | $1,248.75 |
| Ortiz, X. | $0.00 |
| Perez, C. | $0.00 |
| Perez, L. | $0.00 |
| Quezada, E.O. | **$585.00[19]** |
| Ramirez, A. | $0.00 |
| Ruiz, C. | $1,505.00 |
| Ruiz, G. | $0.00 |
| Taveras, A. | $405.00 |
| Urgiles, D. | $0.00 |
| Vargas, M | $0.00 |
| Vega, J. | $630.00 |
| Velandia, N. L. | $0.00 |
| Velandia, O. | $180.00 |

### c.   Unpaid tips

#### i.   Legal Standard

Unpaid tips earned as part of a tipped employee's regular compensation are recoverable under the NYLL, whether as unpaid wages agreed upon by employer and employee or as illegally retained tips.  NYLL § 196-d; Schalaudek, 2017 WL 729544, at *6.

#### ii.   Application

The Tipped Plaintiffs at Remi pooled their tips and elected a "Tips Captain" to record and distribute tips.  (ECF No. 86-2.)  Here, the Tipped Plaintiffs provided the weekly report of their Tips Captain, Plaintiff Andreas Taveras, for their tips for the weeks before Remi closed, which

---

hour, for a total of $5,479; 2016 – 1,263 hours, at $7.50 per hour, with a tip credit of $1.50 per hour, for a total of $1,895; 2017 – 1,019 hours, at $7.50 per hour, with a tip credit of $3.50 per hour, for a total of $3,567, for a grand total of $15,599.  (ECF No. 118).

[19] Plaintiff Quezada's declaration requests payment for 13.5 hours of overtime pay, but the Court calculates Quezada's claimed unpaid overtime hours as 26, not 13.5.  (ECF No. 110).  The Court adjusted the overtime wages owed accordingly.

were never distributed (the "Tips Report").  (See, e.g., ECF No. 106 at 8–19).  Having reviewed the Damages Summary and the specific calculations from each Plaintiff's declaration, the Court adopts those calculations, except where noted.

For example, Plaintiff Carlos Colmena states that he is owed tips from November 11, 2019 to December 12, 2019.  (ECF No. 117).  Based on the Tips Report, Colmena requests $54.66 in tips for the week ending November 17, 2019; $335.74 in tips for the week ending November 24, 2019; $110.12 in tips for the week ending December 1, 2019; $629.38 in tips for the week ending December 8, 2019; and, $333.10 in tips for the week ending December 15, 2019, for a total of $1,463.00 in unpaid tips.  (Id. at 2).  The Court has reviewed each Tipped Plaintiffs' requests based on the Tips Report, and accordingly, each Plaintiff is entitled to recover unpaid tips in the following amounts:

| Plaintiff | Tips Owed |
| --- | --- |
| Amin Tipu, R. | $1,788.13 |
| Calle, W. | $3,517.36 |
| Colmena, C. | $1,463.00 |
| Cortes Zamora, E. | $0.00[20] |
| Cortes Zamora, R. | $0.00 |
| Donge Meneses, Y. | $4,603.51 |
| Fonesca, A. | $3,611.93 |
| Freddi, C. | $3580.35 |
| Gomez Alzate, O.F. | $1,210.57 |
| Gyndunova, B. | $0.00 |
| Iturbide Orozco, M. | $0.00 |
| Kozminski, F. | $0.00 |
| Lovaglio Canal, R. | $0.00 |
| Martinez, H. | $0.00 |
| Mejia Escobar, A. | $1,955.61 |
| Molina, M. | $2,829.23 |
| Ortiz, X. | $1,721.48 |
| Perez, C. | $2,279.08 |

---

[20] Where $0.00 is indicated, that Plaintiff was not a Tipped Plaintiff, and thus not owed any tips.  (See ECF No. 98).

| | |
|---|---|
| Perez, L. | $1,429.10 |
| Quezada, E.O. | $1,692.63 |
| Ramirez, A. | $0.00 |
| Ruiz, C. | $2,204.52 |
| Ruiz, G. | $648.32 |
| Taveras, A. | **$5,438.06[21]** |
| Urgiles, D. | $0.00 |
| Vargas, M. | $0.00 |
| Vega, J. | $3,380.84 |
| Velandia, N.L. | $1,603.07 |
| Velandia, O. | **$6,388.84[22]** |

### d.  Bounced Checks and bank fees

Six plaintiffs also request bank fees or the sum of bounced checks as part of their damages.  Because these checks represent unpaid wages, the wages and the bounced check fees will be considered as such and will be included when calculating liquidated damages and pre-judgment interest.  See Shim v. Millennium Grp., No. 08 Civ. 4022 (FB) (VVP), 2009 WL 10705924, at *4 (E.D.N.Y. Oct. 2, 2009) (granting bank fees and including those fees in calculating liquidated damages and pre-judgment interest).   The Court has reviewed the evidence submitted in connection with these requests, and recommends that these Plaintiffs recover in the following amounts:

| Plaintiff | Bounced Check or Bank Fee |
|---|---|
| Gomez Alzate, O. | $638.45 |
| Mejia Escobar, A. | $571.92 |
| Perez, L. | $828.06 |
| Urgiles, D. | $96.00 |
| Vargas, M. | $69.00 |
| Velandia, O. | $3,727.31 |

---

[21]Plaintiff Andreas Taveras's declaration requests $5,447.06 in unpaid tips, but the Court calculates Taveras's claimed unpaid tips as $5,438.06, and not $5,447.06.  (ECF No. 100).  The Court has adjusted the tips owed accordingly.

[22] Plaintiff Oscar Velandia's declaration requests $6338.84 in unpaid tips, but the Court calculates Velandia's claimed unpaid tips as $6388.84, and not $6338.84.  (ECF No. 103).

e.   **Liquidated damages**

i.   **Legal standard**

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting 29 U.S.C. § 216(b)).   "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150.  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award."  Guaman v. J&C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes, 2016 WL 880199, at *4 (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions

willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'" Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the statute that provides the greatest relief."  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted).  The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL ¶ 198(1-a), but the FLSA does not.  See Valdez v. H&S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016). The NYLL therefore provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see id., and therefore, Plaintiffs are entitled to liquidated damages equivalent to 100% of their unpaid wages set forth above (this includes unpaid Straight Time hours owed, tip credit reimbursement, unpaid tips and unpaid overtime).  See Schalaudek, 2017 WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted).

### ii.    **Application**

Liquidated damages are calculated as the sum of the Straight Time Wages, overtime damages, and unpaid tips awarded to each Plaintiff.  See NYLL § 198(1-a).  Plaintiffs calculated

liquidated damages at 200% of the sum of the minimum wage, overtime damages, and unpaid

tips awarded to each Plaintiff, rather than 100%, but the Second Circuit precludes a plaintiff from

recovering liquidated damages under both FLSA and the NYLL.  See Chowdhury, 666 F. App'x at

60.  Thus, all of the Court's calculations of liquidated damages (the sum of the Straight Time, Tip

Credits, Overtime, Tips and bounced checks or bank fees) differ from the Damages Summary, and

total as follows.

| Plaintiff | Straight Time | Tip Credits | Overtime | Tips | Checks / Fee | Liquidated Damages |
|---|---|---|---|---|---|---|
| Amin Tipu, R. | $1,390.00 | $695.00 | $292.50 | $1,788.13 | $0.00 | $4,165.63 |
| Calle, W. | $1,950.00 | $975.00 | $1,035.00 | $3,517.36 | $0.00 | $7,477.36 |
| Colmena, C. | $1,385.00 | $692.50 | $135.00 | $1,463.00 | $0.00 | $3,675.50 |
| Cortes Zamora, E. | $1,728.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,728.00 |
| Cortes Zamora, R. | $2,280.00 | $0.00 | $945.00 | $0.00 | $0.00 | $3,225.00 |
| Donge Meneses, Y. | $1,460.00 | $730.00 | $337.50 | $4,603.51 | $0.00 | $7,131.01 |
| Fonesca, A. | $1,420.00 | $710.00 | $0.00 | $3,611.93 | $0.00 | $5,741.93 |
| Freddi, C. | $645.00 | $322.50 | $146.25 | $3,580.35 | $0.00 | $4,694.10 |
| Gomez Alzate, O.F. | $1,330.00 | $665.00 | $0.00 | $1,210.57 | $638.45 | $3,844.02 |
| Gyndunova, B. | $1,736.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,736.00 |
| Iturbide Orozco, M | $0.00 | $15,598.75 | $838.54 | $0.00 | $0.00 | $16,437.29 |
| Kozminski, F. | $1,387.50 | $0.00 | $90.00 | $0.00 | $0.00 | $1,477.50 |
| Lovaglio Canal, R. | $24,424.41 | $0.00 | $0.00 | $0.00 | $0.00 | $24,424.41 |
| Martinez, M. | $4,302.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4,302.00 |
| Mejia Escoba, A.r | $1,260.00 | $630.00 | $78.75 | $1,955.61 | $571.92 | $4,496.28 |
| Molina, M. | $1,950.00 | $975.00 | $1,248.75 | $2,829.23 | $0.00 | $7,002.98 |
| Ortiz, X. | $800.00 | $400.00 | $0.00 | $1,721.48 | $0.00 | $2,921.48 |
| Perez, C. | $865.00 | $5,313.97 | $0.00 | $2,279.08 | $0.00 | $8,458.05 |
| Perez, L. | $5,706.00 | $0.00 | $0.00 | $1,429.10 | $828.06 | $7,963.16 |
| Quezada, E.O. | $1,175.00 | $587.50 | $585.00 | $1,692.63 | $0.00 | $4,040.13 |
| Ramirez, A. | $3,204.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,204.00 |
| Ruiz, C. | $2,324.00 | $0.00 | $1,505.00 | $2,204.52 | $0.00 | $6,033.52 |
| Ruiz, G. | $240.00 | $120.00 | $0.00 | $648.32 | $0.00 | $1,008.32 |

| Taveras, A. | $1,470.00 | $735.00 | $405.00 | $5,438.06 | $0.00 | $8,048.06 |
| Urgiles, D. | $0.00 | $35,922.00 | $0.00 | $0.00 | $96.00 | $36,018.00 |
| Vargas, M. | $3,678.80 | $0.00 | $0.00 | $0.00 | $69.00 | $3,747.80 |
| Vega, J. | $1,450.00 | $725.00 | $630.00 | $3,380.84 | $0.00 | $6,185.84 |
| Velandia, N. L. | $880.00 | $440.00 | $0.00 | $1,603.07 | $0.00 | $2,923.07 |
| Velandia, O. | $2,405.00 | $4,934.42 | $180.00 | $6,388.84 | $3,727.31 | $17,635.57 |

### f.   NY WARN Act

#### i.   Legal Standards

The rate of compensation for damages under the NY WARN Act is the higher of (1) the average regular rate received by an employee during the last three years of the employee's employment, or (2) the final regular rate received by an employee.  NYLL § 800-g(1)(a).  Liability is to be calculated "for the period of the violation, up to a maximum of 60 days."  NYLL § 800-g(2).  Courts have interpreted this to mean, the "work days" within the period of violation.  1199 SEIU United Healthcare Workers E., 2013 WL 6003731, at *4.  NY WARN Act damages "can be determined based on evidence presented at an inquest, detailed affidavits, or documentary evidence."  Id. at *4.  For employees who worked less than four months, liability is calculated as "one-half the number of days that the employee was employed by the employer."  NYLL § 800-g(2).  For employees who worked longer than four months, individual damages are calculated by multiplying his or her average daily wage by the number of work days during the applicable violation period.  1199 SEIU United Healthcare Workers E., 2013 WL 6003731, at *6.

#### ii.   Application

Here, Plaintiffs allege that Defendants knew in April 2019 that Remi was closing, well before it eventually closed in December 2019.  (ECF No. 1 ¶ 18).  Thus, under the NY WARN Act they were required to notify Plaintiffs at least 90 days before the closing, which would have been

September 13, 2019.  Defendants did not provide any advance notice of Remi's closure, and thus Plaintiffs are entitled to their maximum recovery under the NY WARN Act.

To calculate these damages, Plaintiffs have each determined their final daily or weekly rate of pay, and have then multiplied that rate by the maximum days each is entitled to under the NY WARN Act.  Plaintiffs calculated their final daily rates of pay by totaling the outstanding wages owed and dividing that amount by the number of days worked in that period; if a plaintiff was paid weekly, counsel used that rate for the final weekly rate of pay.  (See ECF Nos. 92–121). Plaintiffs also included a summary of these calculations in a chart at ECF No. 122-3 at 2.

Having reviewed Plaintiffs' Damages Summary and the specific calculations from each Plaintiff's declaration, the Court adopts those calculations, except where noted.  The calculations that differ from the Damages Summary are noted in **bold**, with an explanatory footnote where necessary.  As example of these calculations, the Court calculated Plaintiff Erick Cortes Zamora's final rate of pay by dividing the total amount of unpaid wages owed ($1,708) by the number of days he worked unpaid (18), for a final daily rate of $96.00.  (ECF No. 98).  He worked for more than four months at Remi, and was never provided notice of its closure, and thus is entitled to the maximum recoverable, 42 days.  (Id.)  Thus, his total NY WARN Act damages are $4,032.00 ($96.00 x 42).  (Id.)

The Court has reviewed each Plaintiffs' calculations, and applying the principles above, each Plaintiff is entitled to recover unpaid tips in the following amounts:

| Plaintiff | NY WARN Damages |
|---|---|
| Amin Tipu, R. | $9,719.64 |
| Calle, W. | **$17,448.81**[23] |

---

[23] Due to Plaintiffs' miscalculation of straight-time hours owed, the Court has updated the total amount of NY WARN damages to include its own correct calculations.  (ECF No. 101).

| | |
|---|---|
| Colmena, C. | $7,351.00 |
| Cortes Zamora, E. | $4,032.00 |
| Cortes Zamora, R. | **$6,156.82**[24] |
| Donge Meneses, Y. | $17,617.74 |
| Fonesca, A. | **$11,634.50**[25] |
| Freddi, C. | $16,429.56 |
| Gomez Alzate, O.F. | **$6,912.00**[26] |
| Gyndunova, B. | $5,376.00 |
| Iturbide Orozco, M. | $0.00 |
| Kozminski, F. | $5,171.45 |
| Lovaglio Canal, R. | $7,830.48 |
| Martinez, H. | $9,560.00 |
| Mejia Escobar, A. | $9,156.84 |
| Molina, M. | $12,255.18 |
| Ortiz, X. | $15,337.98 |
| Perez, C. | $16,690.80 |
| Perez, L. | $15,040.20 |
| Quezada, E.O. | **$14,140.46**[27] |
| Ramirez, A. | $7,120.00 |
| Ruiz, C. | **$7,883.16**[28] |
| Ruiz, G. | $2,016.66 |
| Taveras, A. | **$18,778.81**[29] |
| Urgiles, D. | **$1,440.00**[30] |
| Vargas, M. | $8,026.48 |

[24] For Plaintiff Ricardo Cortes Zamora, the NY WARN damages were calculated by hours worked instead of days worked. (ECF No. 95). The Court thus calculated these damages as they were calculated for the other Plaintiffs and has updated the amount accordingly.

[25] The Court agrees with the calculation of the final daily rate for Plaintiff Abraham Fonseca, but because he worked less than four months (73 days from October 1, 2019 start date and close of restaurant on December 12, 2019), he is entitled to NY WARN Act damages for half of his employment, or 36.5 days, rather than the 42 days at which it was calculated. (ECF No. 106). See NYLL § 800-g(2).

[26] The Court agrees with the calculation of the final daily rate for Plaintiff Oscar Fernando Gomez Alzate, but because he worked less than four months (69 days from October 4, 2019 start date and last date of employment on December 12, 2019), he is entitled to NY WARN Act damages for half of his employment, or 34.5 days, rather than the 42 days at which it was calculated. (ECF No. 120). See NYLL § 800-g(2).

[27] Due to Plaintiffs' miscalculation of straight-time hours owed, the Court has updated the total amount of NY WARN damages to include its own correct calculations. (ECF No. 110).

[28] Due to Plaintiffs' miscalculation of straight-time hours owed, the Court has updated the total amount of NY WARN damages to include its own correct calculations. (ECF No. 104).

[29] Due to Plaintiffs' miscalculation of straight-time hours owed, the Court has updated the total amount of NY WARN damages to include its own correct calculations. (ECF No. 100).

[30] The Court agrees with the calculation of the final daily rate for Plaintiff Dilio Urgiles, but not with the maximum multiplier of 42 days. Urgiles's last date of employment was September 30, 2020, thus he only suffered damages for 18 days of the relevant period (90 days before closure, or September 13, 2019). (ECF No. 97). Accordingly, the Court multiplied the final daily rate by 18 days, not 42 days. See NYLL § 800-g(2).

| | |
|---|---|
| Vega, J. | $12,371.52 |
| Velandia, N.L. | $12,277.02 |
| Velandia, O. | **$14,534.86[31]** |
| **Total:** | $292,309.97 |

As explained above (supra § III.D.1.d), only 53rd Street may be held liable for the NY WARN Act damages, which total $292,309.97. Gill, 2015 WL 1254774, at *3.

### g.   Statutory Damages

#### i.   Legal standards

The WPTA required Defendants to provide Plaintiffs at the time of hire with a notice containing, inter alia, the rate and frequency of pay, NYLL § 195(1).   NYLL § 195(3); see Mondragon, 2019 WL 2551536, at *12.   As of April 9, 2011, violations of the WPTA resulted in damages of $50 per work week, for a maximum of $2,500.   NYLL § 198(1-b).   As of February 27, 2015, violations of Section 195(1) result in damages of $50 per workday, for a maximum of $5,000.   Id.

#### ii.   Application

Here, some of the Plaintiffs allege that Defendants failed to provide them with proper wage notices and that they are entitled to statutory penalties (the "WTPA Plaintiffs").   (ECF No. 86-5 at 13).   Having reviewed Plaintiffs' submissions and the specific calculations from each Plaintiff's declaration, the Court adopts those calculations and recommends that Plaintiffs recover statutory damages in the following amounts:

| Plaintiff | Statutory Damages |
|---|---|
| Amin Tipu, R. | $4,500.00 |
| Calle, W. | $5,000.00 |
| Colmena, C. | $1,350.00 |

---

[31] Due to Plaintiffs' miscalculation of straight-time hours owed, the Court has updated the total amount of NY WARN damages to include its own correct calculations.   (ECF No. 103).

| | |
|---|---|
| Cortes Zamora, E. | $0.00[32] |
| Cortes Zamora, R. | $0.00 |
| Donge Meneses, Y. | $5,000.00 |
| Fonesca, A. | $2,125.00 |
| Freddi, C. | $5,000.00 |
| Gomez Alzate, O.F. | $2,250.00 |
| Gyndunova, B. | $5,000.00 |
| Iturbide Orozco, M. | $5,000.00 |
| Kozminski, F. | $0.00 |
| Lovaglio Canal, R. | $0.00 |
| Martinez, H. | $0.00 |
| Mejia Escobar, A. | $5,000.00 |
| Molina, M. | $5,000.00 |
| Ortiz, X. | $5,000.00 |
| Perez, C. | $5,000.00 |
| Perez, L. | $5,000.00 |
| Quezada, E.O. | $5,000.00 |
| Ramirez, A. | $0.00 |
| Ruiz, C. | $0.00 |
| Ruiz, G. | $150.00 |
| Taveras, A. | $5,000.00 |
| Urgiles, D. | $5,000.00 |
| Vargas, M. | $0.00 |
| Vega, J. | $5,000.00 |
| Velandia, N.L. | $5,000.00 |
| Velandia, O. | $5,000.00 |

> **h.** **Prejudgment interest**

> > **i.** **Legal standard**

Plaintiffs seek an award of prejudgment interest on their compensatory damages under

the NYLL.  (ECF No. 87).  Although prejudgment interest is not awarded where FLSA liquidated

damages are awarded, "prejudgment interest is still appropriate where a plaintiff is awarded

liquidated damages under the NYLL."  Morales v. Mw Bronx, Inc., No. 15 Civ. 6296 (TPG), 2016

WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  "Prejudgment interest applies only to the amount

---

[32] Where there is "$0.00" in this chart, the Plaintiff did not qualify for, and did not request, statutory damages.

of compensatory damages, and excludes the amount of liquidated damages." Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012), adopted by, Order dated Aug. 9, 2012 (ECF No. 20).

Under New York law, interest is awarded at the rate of nine percent per year. N.Y.C.P.L.R. § 5004. For damages accruing "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001. "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered." Maldonado, 2012 WL 1663941, at *11. To determine the appropriate midpoint date, courts identify "'the median date between the earliest ascertainable date the cause of action existed and the date the action was filed [or the last date the cause of action existed].'" Yuquilema v. Manhattan's Hero Corp., No. 13 Civ. 461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Aug. 26, 2014) (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y 2012)).

The Court recommends awarding prejudgment interest on Plaintiffs' NY WARN Act damages because, they are considered "compensatory." See Finnan v. L.F. Rothschild & Co., Inc., 726 F. Supp. 460, 464 (S.D.N.Y. 1989). Because only 53rd Street is liable for Plaintiffs' NY WARN Act damages, the Court will separately calculate the interest on those damages using the same calculation for the other compensatory damages. Gill,2015 WL 1254774, at *3.

### ii.    Application

As set forth above, the Court recommends that Plaintiffs be awarded liquidated damages under the NYLL, and therefore, prejudgment interest is still appropriate, calculated from the

midpoint of the period for which each Plaintiff is recovering damages through December 4, 2020, the date the inquest materials were due to the Court.

The Court has reviewed the Plaintiffs' calculations of each mid-point and the resulting interest, and finds them to be substantially correct. The amounts below represent the Court's calculation of pre-judgment interest accounting for the corrections made to any underlying calculation of each category of damages, as explained above. In addition, the Court has separately calculated the prejudgment interest for the NY WARN Act damages, for which only 53rd Street is liable.

As an example of these calculations, Plaintiff Molina suffered damages in the form of unpaid wages from November 25, 2019 to December 12, 2019. (ECF No. 119). There are 17 days between those dates, making the mid-point December 3, 2019. (Id.) There are 367 days between December 3, 2019 and December 4, 2020 or (1.01 years). (Id.) Molina is entitled to compensatory damages of: $2,829.23 in unpaid tips; $1,950 in unpaid Straight Time Wages; $1,248.75 in unpaid overtime; $975 in owed tip credits; and $12,255.22 in NY WARN Act damages. (Id.) Molina's compensatory damages without NY WARN Act damages total $7,002.98.

Applying New York's 9% annum interest rate, the prejudgment interest owed on Molina's NY WARN Act damages is $1,113.99 ($12,255.22 x .09 x 1.01); and the prejudgment interest owed on his other compensatory damages is $636.57 ($7,002.98 x .09 x 1.01). Applying those same principles, Plaintiffs are owed prejudgment interest as follows:

| Plaintiff | Interest on NY WARN | Interest on Non-NY WARN |
|---|---|---|
| Amin Tipu, R. | $886.77 | $380.04 |
| Calle, W. | $1,606.96 | $688.70 |
| Colmena, C. | $677.00 | $338.50 |
| Cortes Zamora, E. | $368.35 | $157.86 |

| | | |
|---|---:|---:|
| Cortes Zamora, R. | $561.70 | $294.23 |
| Donge Meneses, Y. | $1,609.49 | $651.46 |
| Fonesca, G. | $1,061.45 | $523.85 |
| Freddi, C. | $1,484.72 | $424.21 |
| Gomez Alzate, O.F. | $638.27 | $296.01 |
| Gyndunova, B. | $485.83 | $200.79 |
| Iturbide Orozco, M. | $0.00 | $7,449.47 |
| Kozminski, F. | $467.33 | $133.52 |
| Lovaglio Canal, R. | $879.50 | $2,743.21 |
| Martinez, H. | $873.36 | $393.01 |
| Mejia Escobar, A. | $836.50 | $358.51 |
| Molina, M. | $1,113.99 | $636.57 |
| Ortiz, X. | $1,401.20 | $266.90 |
| Perez, C. | $2,936.42 | $1,488.04 |
| Perez, L. | $2,748.67 | $1,303.67 |
| Quezada, E.O. | $1,279.61 | $365.60 |
| Ramirez, A. | $650.46 | $292.71 |
| Ruiz, C. | $726.98 | $556.41 |
| Ruiz, G. | $180.76 | $90.38 |
| Taveras, A. | $1,715.56 | $735.24 |
| Urgiles, D. | $525.50 | $13,144.10 |
| Vargas, M. | $1,020.24 | $467.61 |
| Vega, J. | $1,130.25 | $565.12 |
| Velandia, N.L. | $1,101.90 | $262.36 |
| Velandia, O. | $2,562.52 | $2,452.02 |
| **Totals:** | **$31,547.47** | **$37,669.34** |

\*          \*          \*

A comprehensive chart of Plaintiffs' damages, including which damages are subject to joint liability, is attached as Exhibit A to this Report and Recommendation.

E.    **Attorneys' Fees and Costs**

Plaintiffs request an award of $93,152.50 for attorneys' fees and $1,102.14 in costs.  (ECF Nos. 86-1 at 14–23; 86 at 6–7; 122 at 2).  Both the FLSA and the NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the

litigation by a reasonable hourly rate.  "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

1.      **Reasonable hourly rate**

Plaintiffs ask that the two attorneys at Cary Kane LLP ("Cary Kane") who worked on this case, Anthony Consiglio and Christopher Baluzy, be compensated at hourly rates of $400 each. (ECF No. 86 at 8).

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill."  Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the 'undesirability' of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300 and $400 per hour.  See Surdu v. Madison Global, LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience); <u>see also</u> <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); <u>but</u> <u>see</u> <u>Williams v. Epic Sec. Corp.</u>, No. 15 Civ. 05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

Consiglio has been practicing law since January 2012, and since that time has primarily worked on employment matters. (ECF No. 86-1 ¶ 41). Consiglio is the only attorney at Cary Kane who specialized in employment discrimination and wage and hour litigation. (<u>Id.</u> ¶ 42). He has practiced in both federal and state courts, including litigating full cases as the sole attorney on the matter. (<u>Id.</u> ¶¶ 43–44). Because Consiglio has almost a decade of employment litigation experience, the Court recommends awarding his requested hourly rate of $400.

Baluzy has been practicing since April 2012 and assists Consiglio with employment discrimination cases and employment matters, although his main areas of practice are labor law and employee benefits. (<u>Id.</u> ¶ 50). Although he has almost a decade of litigation experience, wage and hour litigation is not his area of specialty. (<u>Id.</u>) Given his junior position to Consiglio on this matter, the Court recommends that he be awarded an hourly rate of $350, rather than the requested rate of $400.

In addition, a paralegal, Betsy Ramirez, worked on this matter at an hourly rate of $125. (ECF No. 86 at 8). Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District. <u>See</u> <u>Williams v. Metro-North R.R. Co.</u>, No. 17 Civ. 3847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018); <u>Tatum v. City of New York</u>, No. 06 Civ. 4290 (PGG) (GWG), 2010 WL

334975, at *5 (S.D.N.Y. Jan. 28, 2010) (finding that $125 was reasonable rate for paralegals). Accordingly, the Court finds that the requested rate of $125 is reasonable.

Accordingly, the Court recommends that attorneys' fees be calculated using the reasonable hourly rates of $400 for Consiglio, $350 for Baluzy, and $125 for Ramirez.

### 2.    Reasonable hours expended

To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434); see LCS Grp. LLC v. Shire LLC, 383 F. Supp. 3d 274, 281 (S.D.N.Y. 2019) ("A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees."); Tatum, 2010 WL 334975, at *6 (a court will exclude hours that were not "reasonably expended" (quoting Hensley, 461 U.S. at 434)).

Courts are alert for several categories of potentially unreasonable hours billed. First, "[p]laintiffs cannot recover for time spent by attorneys completing administrative tasks." Chiangxing Li, 2017 WL 892611, at *20 (collecting cases). Second, a court "may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel

did." Id. (collecting cases in which courts reduced fees for overly vague or duplicative entries).

Third, courts may reduce fees "where the hours billed are disproportionate to the quantity or

quality of the attorneys' work." Id. at *21 (collecting cases in which courts reduced fees where

attorneys' work was mediocre or did not reflect complicated analysis).

Plaintiffs have provided the court with contemporaneous billing records of their counsel

at Cary Kane, including hours expended, dates of work, and brief descriptions of the tasks

performed. (ECF Nos. 86-1 at 1–76; 86-7; 122). Plaintiffs state that they are seeking an award of

$93,152.50 for attorneys' fees for 241.2 hours worked by both attorneys and the paralegal on

this matter. (ECF Nos. 86-1 at 1–76; 86-7; 122). On review of the billing records, the Court notes

that the two attorneys performed many administrative tasks, such as filing papers (ECF No. 86-1

at 60, 62), and arranging service of copies of orders. (Id. at 61).

To bring the hours expended into a reasonable range, "[c]ourts in this District have

applied percentage reductions of up to fifty percent." Williams, 2018 WL 3370678, at *12; see,

e.g., Alicea v. City of New York, 272 F. Supp. 2d 603, 612 (S.D.N.Y. 2017) (applying 50% reduction

for excessive and unjustified billing); Auto. Club of N.Y., Inc. v. Dykstra, No. 04 Civ. 2576 (SHS),

2010 WL 3529235, at *3–4 (S.D.N.Y. Aug. 24, 2010) (applying 10% across-the-board reduction in

hours to address three types of unjustified time). The number of hours expended in this case,

over 240, for a case that involved Defendants' default and only one in-person court conference,

also appears high, notwithstanding that there are 29 Plaintiffs. See Estrada v. Giovanni's Italian

Pizzeria, Inc., No. 16 Civ. 6162 (PGG) (GWG), 2020 WL 3166964, at *8 (S.D.N.Y. June 15, 2020)

(finding 35.6 hours "on the high end of expected hours" for a default FLSA case); Cocoletzi v. Fat

Sal's Pizza II, Corp., No. 15 Civ. 02696 (CM) (DF), 2019 WL 92456, at *24 (S.D.N.Y. Jan. 3, 2019),

adopted by 2019 WL 5727472 (S.D.N.Y. Jan. 7, 2019) (noting that 118.45 hours "seems, on its face, to be quite high for a default case"); Rodriguez v. Heinchon Marcus Distrib., LLC, 16 Civ. 1447 (VB) (PED), 2016 WL 7489067 at *9 (S.D.N.Y. Nov. 10, 2016), adopted by 2016 WL 7477559 (S.D.N.Y. Dec. 28, 2016) (finding 39.4 billable hours reasonable in a FLSA default judgment case).

In light of these factors, the Court finds that a reduction of 30% is appropriate. See Salazar v. 203 Lena Inc., No. 16 Civ. 7743 (VB) (JLC), 2020 WL 5627118, at *14 (S.D.N.Y. Sept. 18, 2020), adopted by 2020 WL 6257158 (S.D.N.Y. Oct. 23, 2020) (recommending a 30% reduction of requested hours in default FLSA case); Dacas v. Duhaney, No. 17 Civ. 3568 (EK) (SMG), 2020 WL 4587343, at *5 (E.D.N.Y. June 18, 2020) (same), adopted by 2020 WL 4586371 (Aug. 10, 2020); Dominguez v. 322 Rest. Corp., No. 14 Civ. 3643 (RA), 2019 WL 2053995, at *3 (S.D.N.Y. May 9, 2019) (same); Congregation Rabbinical Coll. v. Vill. of Pomona, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016) (same).

Applying the reasonable rates set forth above and the 30% reduction to the number of hours, the Court recommends an award of attorneys' fees in the total amount of $60,331.25, calculated as follows:

| Timekeeper | Requested Rate | Approved Rate | Requested Hours | Hours Reduced by 30% | Approved Total |
|---|---|---|---|---|---|
| A. Consiglio | $400 | $400 | 89.8 | 62.86 | $25,144.00 |
| C. Baluzy | $400 | $350 | 139.3 | 97.51 | $34,128.50 |
| B. Ramirez | $125 | $125 | 12.1 | 8.47 | $1,058.75 |
| | | | | Total: | $60,331.25 |

### 3.   Costs

Under the FLSA, NYLL and WTPA, Plaintiffs may also recover their reasonable costs in this action. See 29 U.S.C. § 216(b); NYLL §§ 663(1), 198(1-d). Plaintiffs seek an award of $1,102.14 in

costs for the filing, service of process fee, and photocopying and mailing costs incurred in this action.  (ECF Nos. 86-1 at 78; 86-9 at 2, 3–6, 8; 122-2 at 3–5).  The Court finds that Plaintiffs have substantiated costs in the amount of $1,102.14 with contemporaneous documentation showing that their counsel paid the amounts for which they now seeking reimbursement.  See Sanchez, 2018 WL 4502008, at *17 (noting that adequate substantiation is required for an award of costs); Raymond James & Assocs., Inc. v. Vanguard Funding, LLC, No. 17 Civ. 3327 (VSB) (SDA), 2018 WL 8758763, at *6 (S.D.N.Y. Apr. 16, 2018) (awarding documented expenses for, inter alia, filing and service of process fees).  In addition, the Court may take judicial notice of the filing fees reflected on the docket as a support for an award of those costs.  See Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *6 (S.D.N.Y. Jan. 13, 2019) (taking judicial notice of $400 filing fee and awarding costs in that amount); BWP Media USA, Inc. v. Uropa Media, Inc., No. 13 Civ. 7871 (JSR) (JCF), 2014 WL 2011775, at *4 (S.D.N.Y. May 16, 2014) (same).  Accordingly, the Court recommends that Plaintiffs be awarded costs in the amount of $1,102.14.

## IV.  CONCLUSION

The Court respectfully recommends that Plaintiffs be awarded damages as calculated herein, and as set forth in the spreadsheet attached as Exhibit A.

Dated:          New York, New York
                January 15, 2021

SARAH L. CAVE
United States Magistrate Judge

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D). or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**EXHIBIT A**

| Last Name | First Name | Unpaid Wages | Unpaid Overtime | Tip Credits Owed | Unpaid Tips | Bounced Checks | Bank Fees | Liquidated | Statuory | NY WARN ACT | Pre-J Interest (excluding WARN) | Pre-J Interest on WARN | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amin Tipu | Ruhul | $1,390.00 | $292.50 | $695.00 | $1,788.13 | $0.00 | $0.00 | $4,165.63 | $4,500.00 | $9,719.64 | $380.04 | $886.77 | $23,817.71 |
| Calle | Walter | $1,950.00 | $1,035.00 | $975.00 | $3,517.36 | $0.00 | $0.00 | $7,478.06 | $5,000.00 | $17,448.81 | $688.70 | $1,606.96 | $39,699.89 |
| Colmena | Carlos | $1,385.00 | $135.00 | $692.50 | $1,463.00 | $0.00 | $0.00 | $3,675.50 | $1,350.00 | $7,351.00 | $338.50 | $677.00 | $17,067.50 |
| Cortes Zamora | Erick | $1,728.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,728.00 | $0.00 | $4,032.00 | $157.86 | $368.35 | $8,014.21 |
| Cortes Zamora | Ricardo | $2,280.00 | $945.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,225.00 | $0.00 | $6,156.82 | $294.23 | $561.70 | $13,462.75 |
| Donge Meneses | Yullios | $1,460.00 | $337.50 | $730.00 | $4,603.51 | $0.00 | $0.00 | $7,131.01 | $5,000.00 | $17,617.74 | $651.46 | $1,609.49 | $39,140.71 |
| Fonesca | Abraham | $1,420.00 | $0.00 | $710.00 | $3,611.93 | $0.00 | $0.00 | $5,741.93 | $2,125.00 | $11,634.50 | $523.85 | $1,061.45 | $26,828.66 |
| Freddi | Claudi | $645.00 | $146.25 | $322.50 | $3,580.35 | $0.00 | $0.00 | $4,694.10 | $5,000.00 | $16,429.56 | $424.21 | $1,484.72 | $32,726.69 |
| Gomez Alzate | Oscar Fernando | $1,330.00 | $0.00 | $665.00 | $1,210.57 | $638.45 | $0.00 | $3,844.02 | $2,250.00 | $6,912.00 | $296.01 | $638.27 | $17,784.32 |
| Gyndunova | Bairma | $1,736.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,736.00 | $5,000.00 | $5,376.00 | $200.79 | $485.83 | $14,534.62 |
| Iturbide Orozco | Mariana | $0.00 | $838.54 | $15,599.00 | $0.00 | $0.00 | $0.00 | $16,437.29 | $5,000.00 | $0.00 | $7,449.47 | $0.00 | $45,324.30 |
| Kozminski | Filip | $1,387.50 | $90.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,477.50 | $0.00 | $5,171.45 | $133.52 | $467.33 | $8,727.30 |
| Lovaglio Canal | Rachel | $24,424.41 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $24,424.41 | $0.00 | $7,830.48 | $2,743.21 | $879.50 | $60,302.01 |
| Martinez | Heriberto | $4,302.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4,302.00 | $0.00 | $9,560.00 | $393.01 | $873.36 | $19,430.37 |
| Mejia Escobar | Amelia | $1,260.00 | $78.75 | $630.00 | $1,955.61 | $571.92 | $0.00 | $4,496.28 | $5,000.00 | $9,156.84 | $358.51 | $836.50 | $24,344.41 |
| Molina | Manuel | $1,950.00 | $1,248.75 | $975.00 | $2,829.23 | $0.00 | $0.00 | $7,002.98 | $5,000.00 | $12,255.18 | $645.81 | $1,130.17 | $33,037.12 |
| Ortiz | Xavier | $800.00 | $0.00 | $400.00 | $1,721.48 | $0.00 | $0.00 | $2,921.48 | $5,000.00 | $15,337.98 | $266.90 | $1,401.20 | $27,849.04 |
| Perez | Carlos | $865.00 | $0.00 | $5,313.97 | $2,279.08 | $0.00 | $0.00 | $8,458.05 | $5,000.00 | $16,690.80 | $1,488.04 | $2,936.42 | $43,031.36 |
| Perez | Luis | $5,706.00 | $0.00 | $0.00 | $1,429.10 | $828.06 | $0.00 | $7,963.16 | $5,000.00 | $15,040.20 | $1,303.67 | $2,748.67 | $40,018.86 |
| Quezada | Esdras Obed | $1,175.00 | $585.00 | $587.50 | $1,692.63 | $0.00 | $0.00 | $4,040.13 | $5,000.00 | $14,140.46 | $365.60 | $1,279.61 | $28,865.93 |
| Ramirez | Armondo | $3,204.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $3,204.00 | $0.00 | $7,120.00 | $292.71 | $650.46 | $14,471.17 |
| Ruiz | Cesar | $2,324.00 | $1,505.00 | $0.00 | $2,204.52 | $0.00 | $0.00 | $6,033.52 | $0.00 | $7,883.16 | $556.41 | $779.50 | $21,233.59 |
| Ruiz | Gabriel | $240.00 | $0.00 | $120.00 | $648.32 | $0.00 | $0.00 | $1,008.35 | $150.00 | $2,016.66 | $90.38 | $180.76 | $4,454.47 |
| Taveras | Andreas | $1,470.00 | $405.00 | $735.00 | $5,438.06 | $0.00 | $0.00 | $8,048.06 | $5,000.00 | $18,778.81 | $735.24 | $1,715.56 | $42,325.73 |
| Urgiles | Dilio | $0.00 | $0.00 | $35,922.00 | $0.00 | $0.00 | $96.00 | $36,018.00 | $5,000.00 | $1,440.00 | $13,144.10 | $525.50 | $92,145.60 |
| Vargas | Marcelo | $3,678.80 | $0.00 | $0.00 | $0.00 | $0.00 | $69.00 | $3,747.80 | $0.00 | $8,026.48 | $467.61 | $1,020.24 | $17,009.93 |
| Vega | Julio | $1,450.00 | $630.00 | $725.00 | $3,380.84 | $0.00 | $0.00 | $6,185.94 | $5,000.00 | $12,371.52 | $565.12 | $1,130.25 | $31,438.67 |
| Velandia | Nubia Liliana | $880.00 | $0.00 | $440.00 | $1,603.07 | $0.00 | $0.00 | $2,923.28 | $5,000.00 | $12,277.02 | $262.36 | $1,101.90 | $24,487.63 |
| Velandia | Oscar | $2,405.00 | $180.00 | $4,934.42 | $6,388.84 | $3,727.31 | $0.00 | $17,635.57 | $5,000.00 | $14,534.86 | $2,452.02 | $2,562.52 | $59,820.54 |
| | | | | | | | Totals: | $292,309.97 | | $37,669.34 | $31,547.47 | $871,395.09 |